UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 4:18-cv-10276-XXXX

HARTFORD FIRE INSURANCE
COMPANY, a foreign corporation,

    Plaintiff,

v.

NEW YORK MART GROUP, INC.,
a foreign corporation, IFRESH, INC.,
a foreign corporation, NEW SUNSHINE
GROUP, LLC, a Florida corporation,

    Defendants.
_____/

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Plaintiff, HARTFORD FIRE INSURANCE COMPANY, by and through its undersigned counsel, hereby sues the Defendants, NEW YORK MART GROUP, INC., IFRESH, INC. and NEW SUNSHINE GROUP, LLC, and states as follows:

### I. JURISDICTION AND VENUE

1. This is an action for declaratory judgment and supplemental relief under 28 U.S.C. §§2201 and 2202.

2. Subject matter jurisdiction is based upon 28 U.S.C. §1332(a)(1), diversity of citizenship. The parties are citizens of different states and the amount in controversy exceeds the jurisdictional limits of this Court.

3. Plaintiff, HARTFORD FIRE INSURANCE COMPANY ("HARTFORD"), is a corporation organized and existing under the laws of the State of Connecticut, whose principal place of business is located in Hartford, Connecticut, and which is registered with and authorized to do business in the State of Florida. HARTFORD is a citizen of the state of Connecticut.

4. Defendant, NEW YORK MART GROUP, INC. ("NYMG"), is a corporation organized and existing under the laws of the State of New York, whose principal place of business is located in New York, New York. NYMG is a citizen of the state of New York.

5. Defendant, IFRESH, INC. ("IFRESH"), is a corporation organized and existing under the laws of the State of New York, whose principal place of business is located in New York, New York. IFRESH is a citizen of the state of New York.

6. Defendant, NEW SUNSHINE GROUP, LLC ("NSG"), is a corporation organized and existing under the laws of the State of Florida, whose principal place of business is located in Marathon, Monroe County, Florida. NSG is a citizen of the state of Florida.

7. The amount in controversy exceeds Seventy-Five Thousand and 00/100 Dollars ($75,000.00), exclusive of interest, costs and attorneys' fees, and this Court otherwise has jurisdiction over the subject matter hereof.

8. Venue is proper in this Court because at least one of the corporate Defendants conducted the business giving rise to the instant claims within this jurisdiction and resides in this jurisdiction.

9. All conditions precedent to the filing of the instant action have occurred or have otherwise been waived.

## II. GENERAL ALLEGATIONS

10. On June 11, 2015, SKKR Trading, LLC d/b/a 38 Live Bait ("38 Live Bait") filed suit against NSG and NYMG in the action styled *SKKR Trading, LLC d/b/a 38 Live Bait v. New York Sunshine Group, LLC and New York Mart Group, Inc.*, Manatee County Circuit Court Case No. 2015 CA 2733 (the "Underlying Litigation").

11. On April 17, 2017, the Court in the Underlying Litigation issued a *Final Judgment* against NSG and NYMG awarding damages totaling Three Hundred Eighty-Five Thousand Four

Hundred Seventy-One and 97/100 Dollars ($385,471.97) –under Count I in the in the amount of Three Hundred Sixty-Six Thousand Four Hundred Eighty-Eight and 22/100 Dollars ($366,488.22) and under Count III in the in the amount of Eighteen Thousand Nine Hundred Eighty-Three and 75/100 Dollars ($18,983.75) – together with interest on both amounts at the statutory rate. A true and correct copy of the *Final Judgment* is attached hereto as **Exhibit "A"**.

12. On March 7, 2017, the Court in the Underlying Litigation also issued an *Order Granting Plaintiff's Entitlement to, and Amount of, Attorneys' Fees Pursuant to the Court's November 7, 2016 Order and Amount of Attorneys' Fees Pursuant to the Court's January 27, 2017 Order* (the "*Attorneys' Fees Order*"), awarding attorneys' fees to 38 Live Bait and against NSG and NYMG in the amount of Forty Thousand Six Hundred Fifty-Four and 50/100 Dollars ($40,654.50). A true and correct copy of the *Attorneys' Fees Order* is attached hereto as **Exhibit "B"**.

13. As a result of the entry of the *Final Judgment* and *Attorneys' Fees Order* in the Underlying Litigation, NSG and NYMG filed an appeal before the Florida Second District Court of Appeals in Consolidated Case Nos. 2D17-1432 and 2D17-2051 (the "Appellate Litigation").

14. At the request of NSG, NYMG and IFRESH (collectively, the "INDEMNITORS"), on June 30, 2017, HARTFORD, as surety, issued two (2) separate and distinct *Supersedeas Bonds*, bearing nos. 72BSBFS5949 and 72BSBFS5954 (collectively, the "*Bonds*"), on behalf of NYMG and NSG, as principals, and in favor of the 38 Live Bait, as obligee. *Supersedeas Bond* No. 72BSBFS5949 was issued in the amount of Three Hundred Eighty-Five Thousand Four Hundred Seventy-One and 97/100 Dollars ($385,471.97) and was intended to secure the *Final Judgment*; *Supersedeas Bond* No. 72BSBFS5954 was issued in the amount of Forty-Four Thousand Seven Hundred Sixty and 61/100 Dollars ($44,760.61) and was intended to secure the *Attorneys' Fees Order*. True and correct copies of the *Bonds* are attached hereto as **Composite Exhibit "C"**.

15. On June 12, 2017, and as a condition precedent to issuing the *Bonds*, INDEMNITORS executed a *General Indemnity Agreement* ("*Indemnity Agreement*") in favor of HARTFORD. A true and correct copy of the *Indemnity Agreement* is attached hereto and made a part hereof as **Exhibit "D"**.

16. Pursuant to Article 4 of the *Indemnity Agreement*, the INDEMNITORS, jointly and severally, agreed to immediately indemnify, hold harmless, and exonerate HARTFORD from and against any and all losses and/or expenses incurred in connection with HARTFORD's issuance of the *Bonds*:

> **Indemnification, Hold Harmless and Exoneration.** The *Indemnitors shall indemnify, hold harmless and exonerate Hartford* from and against any and all Default, Loss, Claims and exposure or liabilities relating to Underwriting. The *Indemnitors shall immediately be liable to Hartford for all Loss* from the date such Loss was incurred by Hartford. Indemnitors agree that verified originals, copies, computer printouts, or other payment records kept or prepared by Hartford in the ordinary course of business shall be prima facie evidence of the fact and amount of Loss…. (Emphasis added)

17. Pursuant to Article 11 of the *Indemnity Agreement*, the INDEMNITORS, jointly and severally agreed to collateralize HARTFORD immediately upon demand to secure the surety against any potential losses and/or expenses incurred in connection with HARTFORD's issuance of the *Bonds*:

> **Demand for Collateral.** On Hartford's demand, the *Indemnitors shall immediately but no later than thirty (30) days after demand, deposit with Hartford collateral in form, amount and value acceptable to Hartford.* Hartford may, in its sole discretion, demand collateral under this provision regardless of whether any Claim has been made, any Default has occurred, or any Loss has been incurred. … Said collateral may be used by Hartford in its sole discretion at any time without notice to the Indemnitors to accomplish the purposes of this Agreement…. (Emphasis added)

18. Pursuant to Article 22 of the *Indemnity Agreement*, the INDEMNITORS, jointly and severally agreed that HARTFORD shall be entitled to specific performance of the *Indemnity Agreement* to protect its rights to indemnification, exoneration and collateralization:

**Equitable Remedies**. In the event of a Default, Loss or Claim, Hartford is *entitled to specific performance of this Agreement* including relief in the form of a preliminary, temporary or permanent injunction and/or restraining order or such other relief as may be available. The Indemnitors failure to immediately perform any obligation or requirement of this Agreement, or Other Surety Documents *shall cause irreparable harm to Hartford for which there is no adequate remedy at law*…. (Emphasis added)

19. At the request of the INDEMNITORS, on June 20, 2017, and HARTFORD, as surety, issued a *Rider* to *Supersedeas Bond* No. 72BSBFS5949, increasing the penal sum thereof to the amount of Four Hundred Twenty-Four Thousand Four Hundred Four and 64/100 Dollars ($424,404.64). A true and correct copy of the *Rider* is attached hereto as **Exhibit "E"**.

20. By correspondence dated August 13, 2018, HARTFORD made demand upon the INDEMNITORS to immediately satisfy their obligations under the *Indemnity Agreement* by exonerating and collateralizing HARTFORD against any potential losses and/or expenses incurred in connection with HARTFORD's issuance of the *Bonds*. A true and correct copy of HARTFORD's correspondence dated August 13, 2018, is attached hereto as **Exhibit "F"**.

21. Despite such demand, the INDEMNITORS have failed and continue to fail and/or refuse to fulfill their indemnity, exoneration and collateral obligation to HARTFORD.

22. On October 26, 2018, the Court in the Appellate Litigation affirmed the *Final Judgment* and *Attorney's Fees Order* against NSG and NYMG. A true and correct copy the *Opinion* is attached hereto as **Exhibit "G"**.

23. Following the affirmation in the Appellate Litigation, HARTFORD issued several verbal and written demands upon the INDEMNITORS for the immediate satisfaction of the outstanding *Final Judgment* and *Attorney's Fees Order* or, in the alternative, for compliance with the outstanding collateral demand under the *Indemnity Agreement*.

24. Despite such demands, the INDEMNITORS have failed and continue to fail and/or refuse to fulfill their obligations to HARTFORD under the *Indemnity Agreement*.

25. Based upon the *Final Judgment* and *Attorney's Fees Order* entered in the Underlying Litigation, as affirmed in the Appellate Litigation, HARTFORD remains exposed to likely liability under the *Bonds* in the combined penal sum amount of Four Hundred Sixty-Nine Thousand One Hundred Sixty-Five and 25/100 Dollars ($469,165.25).

26. Additionally, HARTFORD remains exposed to potential continuing attorneys' fees and costs incurred in addressing the claims against the *Bonds*. As of the date of filing this complaint, HARTFORD incurred losses and/or expenses in the amount of Three Thousand Eight Hundred Forty-Six and 50/100 Dollars ($3,846.50) a result of issuing the *Bonds*.

27. HARTFORD has retained the services of the undersigned counsel to represent its interests in this matter and is required to pay a reasonable fee for such services.

28. Under the *Indemnity Agreement*, the INDEMNITORS, jointly and severally, agreed to be liable for, and agreed that HARTFORD is entitled to recover from the INDEMNITORS, any and all attorneys' fees and costs incurred in the prosecution of any action under the *Indemnity Agreement*.

**COUNT I - SPECIFIC PERFORMANCE / INJUNCTIVE RELIEF
DEMAND FOR POSTING OF COLLATERAL
(AGAINST INDEMNITORS)**

29. HARTFORD re-alleges and re-avers the allegations of paragraphs 1 through 28 hereof, as if fully set forth herein.

30. This is an action for specific performance seeking equitable relief.

31. There exists a valid and fully enforceable contract between HARTFORD and the INDEMNITORS, the terms of which are memorialized in the *Indemnity Agreement*.

32.     Pursuant to Article 4 of the *Indemnity Agreement*, the INDEMNITORS, jointly and severally, agreed to, upon demand, place HARTFORD in possession of sufficient funds to meet HARTFORD'S liabilities.

33.     Pursuant to Article 11 of the *Indemnity Agreement*, the INDEMNITORS, jointly and severally agreed to collateralize HARTFORD immediately upon demand to secure the surety against any potential losses and/or expenses incurred in connection with HARTFORD's issuance of the *Bonds*.

34.     Pursuant to Article 22 of the *Indemnity Agreement*, the INDEMNITORS, jointly and severally agreed that HARTFORD shall be entitled to specific performance of the *Indemnity Agreement* to protect its rights to indemnification, exoneration and collateralization.

35.     As a result of the pending claims against the *Bonds*, HARTFORD has made demand upon the INDEMNITORS under the *Indemnity Agreement* to place HARTFORD with funds sufficient to cover HARTFORD's actual and/or potential losses and/or expenses.

36.     The INDEMNITORS have failed and/or refused to fully perform their obligations under the *Indemnity Agreement*.

37.     The INDEMNITORS' failure to place funds with HARTFORD in accordance with the *Indemnity Agreement* has and continues to cause irreparable harm for which HARTFORD has no adequate remedy at law.

38.     HARTFORD is fearful and apprehensive that the INDEMNITORS are or will become financially unable to pay any amounts that may be found owing under the *Bonds* for which HARTFORD may be liable, or that the INDEMNITORS, based upon their refusal to place HARTFORD with sufficient funds in accordance with its demand, will sell, transfer, dispose of, lien, secure or otherwise divert or conceal their assets.  HARTFORD is also fearful and

apprehensive that the INDEMNITORS will be financially unable to pay the expenses incurred and/or to be incurred by HARTFORD, including attorneys' fees.

39. HARTFORD is entitled to legal and equitable relief for specific performance of the INDEMNITORS' obligation to deposit the demanded funds with HARTFORD.

40. In the absence of the equitable relief sought herein, HARTFORD will suffer irreparable damage and loss because it will be forced to advance further funds in connection with the various claims on the *Bonds* without being adequately secured by the INDEMNITORS for its obligations under the *Bonds*.

41. By virtue of the rights under the *Indemnity Agreement*, HARTFORD is entitled to have the INDEMNITORS post funds or other security with HARTFORD that is sufficient to cover the actual and/or anticipated losses and/or claims under the *Bonds*.

42. Unless the relief in the nature herein requested or its equivalent is granted, HARTFORD's equitable rights will be forever lost, depriving HARTFORD of adequate security for its obligations under the *Bonds*. Further, unless the equitable relief requested below is granted, INDEMNITORS are likely to sell, transfer, dispose, lien, secure, or otherwise, divert their assets from being used to discharge INDEMNITORS' obligations to HARTFORD.

43. HARTFORD has a high probability of success on the merits, as INDEMNITORS failure to satisfy the various conditions of the *Indemnity Agreement* have triggered the INDEMNITORS' obligations thereunder.

44. The threatened injury to HARTFORD outweighs the potential damage to the INDEMNITORS if the relief requested herein is granted, and such relief would not be adverse to the public interest.

WHEREFORE, HARTFORD respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against the INDEMNITORS, granting HARTFORD specific

performance of the *Indemnity Agreement* by directing the INDEMNITORS to place HARTFORD with funds sufficient to cover HARTFORD's actual and/or potential losses and/or expenses, awarding HARTFORD its attorneys' fees and costs incurred in prosecution of the instant action pursuant to the terms of the *Indemnity Agreement*, and awarding HARTFORD such other and further relief as this Court deems necessary, just and proper.

## COUNT II
## CONTRACTUAL EXONERATION
## (AGAINST INDEMNITORS)

45. HARTFORD re-alleges and re-avers the allegations of paragraphs 1 through 28 hereof, as if fully set forth herein.

46. This is an action for contractual exoneration.

47. HARTFORD has incurred and/or will incur losses and expenses associated with its investigation, defense and/or handling of the above-described claims against the *Bonds*. Additional indebtedness under the *Indemnity Agreement* due and owing from the INDEMNITORS to HARTFORD will continue to accrue, including but not limited to the expenditure of funds paid: (i) in defense of the pending claims against the *Bonds*; (ii) in resolution of the pending claims against the *Bonds*; and/or (iii) in resolution of the instant litigation.

48. Pursuant to the Article 4 of the *Indemnity Agreement*, the INDEMNITORS, jointly and severally, agreed to exonerate HARTFORD from and against any losses and/or expenses incurred and/or to be incurred in connection with HARTFORD's issuance of the *Bonds*.

49. By virtue of the right of exoneration set forth in the *Indemnity Agreement*, HARTFORD is entitled to the INDEMNITORS' assets to protect HARTFORD from any and all losses and/or expenses which may be incurred in connection with HARTFORD's issuance of the *Bonds*.

50. The INDEMNITORS have failed to satisfy their obligations under the *Indemnity Agreement* by refusing to exonerate or otherwise place funds with HARTFORD sufficient to cover the losses and/or expenses incurred and/or to be incurred under the *Bonds*.

51. Unless the personal assets of the INDEMNITORS are collateralized, HARTFORD will not be adequately secured for its obligation on the *Bonds*.

WHEREFORE, HARTFORD respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against the INDEMNITORS, requiring the INDEMNITORS to perform under the *Indemnity Agreement* as follows: (a) exonerate HARTFORD for its potential losses and expenses to be incurred under the *Bonds*; (b) pay and reimburse HARTFORD for its attorneys' fees and costs incurred in prosecution of the instant action; and (c) award HARTFORD such other and further relief as this Court deems necessary, just and proper.

### COUNT III - COMMON LAW EXONERATION
### (AGAINST NYMG AND NSG)

52. HARTFORD re-alleges and re-avers the allegations of paragraphs 1 through 28 hereof, as if fully set forth herein.

53. This is an action for exoneration at common law and in equity.

54. There exists a special relationship between HARTFORD, as surety, and NSG and NYMG collectively, as principals, arising out of the parties' business dealings related to the *Bonds*, such that it is appropriate for common law exoneration to exist.

55. HARTFORD has fully and completely performed any and all obligations arising out of the parties' business dealings related to the *Bonds*, and is wholly without fault for any losses, expenses and/or liabilities which have and/or may ultimately arise therefrom.

56. HARTFORD has incurred and/or or will incur losses and expenses associated with its investigation, defense and/or handling of the above-described claim against the *Bonds*.

Additional indebtedness arising out of the special relationship will continue to accrue, including but not limited to the expenditure of funds paid: (i) in defense of the pending claims against the *Bonds*; (ii) in resolution of the pending claims against the *Bonds*; and/or (iii) in resolution of the instant litigation.

57. Any and all losses and expenses incurred and/or to be incurred as a result of the special relationship between HARTFORD, NSG, and NYMG, as well as any liability which may be imposed upon HARTFORD as a result of the pending claim against the *Bonds*, arise only out of the vicarious, constructive, derivative or technical liability imposed upon HARTFORD as a result of the fault and/or wrongdoing of NSG and NYMG.

58. At common law, NSG and NYMG are responsible to HARTFORD for any and all losses and expenses incurred and/or to be incurred, and NSG and NYMG are further obligated to immediately provide HARTFORD with sufficient funds as needed to satisfy HARTFORD's existing and potential obligations under the *Bonds*.

59. By virtue of the right of exoneration set forth at common law and in equity, HARTFORD is entitled to NSG and NYMG's assets to protect HARTFORD from any and all losses and/or expenses incurred and/or to be incurred in connection with HARTFORD's issuance of the *Bonds*.

60. NSG and NYMG have failed to satisfy their obligations at common law and in equity by refusing to exonerate or otherwise place funds with HARTFORD sufficient to cover the losses and/or expenses incurred and/or to be incurred under the *Bonds*.

61. Unless the assets of NSG and NYMG are collateralized, HARTFORD will not be adequately secured for its obligation on the *Bonds*.

WHEREFORE, HARTFORD respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against NSG and NYMG, jointly and severally, requiring NSG and

NYMG to exonerate HARTFORD at common law and in equity as follows: (a) provide collateral to HARTFORD sufficient to exonerate HARTFORD for its potential losses and expenses to be incurred; (b) pay and reimburse HARTFORD for its attorneys' fees and costs incurred in prosecution of the instant action; and (c) award HARTFORD such other and further relief as this Court deems necessary, just and proper.

### COUNT IV - BREACH OF CONTRACT: DAMAGES / DEMAND FOR CONTRACTUAL INDEMNIFICATION (AGAINST INDEMNITORS)

62. HARTFORD re-alleges and re-avers the allegations of paragraphs 1 through 28 hereof, as if fully set forth herein.

63. This is an action for damages seeking relief at law under the *Indemnity Agreement*.

64. There exists a valid and fully enforceable contract between HARTFORD and the INDEMNITORS, the terms of which are memorialized in the *Indemnity Agreement*.

65. HARTFORD has fully performed all of its obligations under the *Indemnity Agreement*.

66. As a result of the claims against the *Bonds*, HARTFORD has made demand upon the INDEMNITORS under the *Indemnity Agreement* for the payment in satisfaction of the losses and/or expenses incurred and/or to be incurred by HARTFORD.

67. The INDEMNITORS have failed and/or refused to fully perform their obligations under the *Indemnity Agreement*, including but not limited to their obligation to indemnify HARTFORD.

68. As a proximate result of the INDEMNITORS' breach of their obligations under the *Indemnity Agreement*, HARTFORD has and will continue to incur substantial financial damages, including but not limited to the expenditure of funds paid: (i) in defense of the pending claims

against the *Bonds*; (ii) in resolution of the pending claims against the *Bonds*; and/or (iii) in resolution of the instant litigation.

WHEREFORE, HARTFORD respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against the INDEMNITORS, awarding HARTFORD its compensatory damages which have been and/or will be incurred as a result of the INDEMNITORS' breach of the *Indemnity Agreement*, awarding HARTFORD its attorneys' fees and costs incurred in prosecution of the instant action pursuant to the terms of the *Indemnity Agreement*, and awarding HARTFORD such other and further relief as this Court deems necessary, just and proper.

### COUNT V - COMMON LAW INDEMNIFICATION
### (AGAINST NYMG AND NSG)

69. HARTFORD re-alleges and re-avers the allegations of paragraphs 1 through 28 hereof, as if fully set forth herein.

70. This is an action for damages seeking relief at common law and in equity.

71. There exists a special relationship between HARTFORD, as surety, and NSG and NYMG collectively, as principals, arising out of the parties' business dealings related to the *Bonds*, such that it is appropriate for common law indemnification to exist.

72. HARTFORD has fully and completely performed any and all obligations arising out of the parties' business dealings related to *Bonds*, and is wholly without fault for any losses, expenses and/or liabilities which have and/or may ultimately arise.

73. HARTFORD has incurred and/or will incur losses and expenses as a result of the special relationship between HARTFORD, NSG and NYMG. Additional indebtedness arising out of the special relationship has and will continue to accrue, including but not limited to the

expenditure of funds paid: (i) in defense of the pending claims against the *Bonds*; (ii) in resolution of the pending claims against the *Bonds*; and/or (iii) in resolution of the instant litigation.

74. Any and all losses and expenses incurred and/or to be incurred as a result of the special relationship between HARTFORD, NSG and NYMG, as well as any liability which may be imposed upon HARTFORD as a result of the pending claim against the *Bonds*, arise only out of the vicarious, constructive, derivative or technical liability imposed upon HARTFORD as a result of the fault and/or wrongdoing of NSG and NYMG.

75. At common law, NSG and NYMG are responsible to HARTFORD for any and all losses and/or expenses incurred or to be incurred.

WHEREFORE, HARTFORD respectfully requests that this Honorable Court enter a *Final Judgment* in its favor and against NSG and NYMG, awarding HARTFORD its compensatory damages which have been and/or will be incurred as a result of HARTFORD's payment of losses and expenses for which NSG and NYMG should be liable under the legal theory of common law indemnity, awarding HARTFORD its reasonable attorneys' fees and costs incurred in prosecution of the instant action, and awarding HARTFORD such other and further relief as this Court deems necessary, just and proper.

DATED this **10th** day of December 2018.

        **ETCHEVERRY HARRISON LLP**
        Attorneys for HARTFORD
        150 South Pine Island Road, Suite 105
        Ft. Lauderdale, FL 33324
        Phone: (954) 370-1681
        Fax: (954) 370-1682
        etcheverry@etchlaw.com
        service@etchlaw.com

By: *s/Jeffrey S. Geller*
        Edward Etcheverry, Fla. Bar No. 856517
        Jeffrey S. Geller, Fla. Bar No. 63721

CASE NO.: 4:18-cv-10276-XXXX

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that on this 10th day of December, 2018, we electronically filed the foregoing document with the Clerk of the Court, through CM/ECF and served via regular US Mail to: New York Mart Group Inc., 2-39 54th Avenue, Long Island City, New York 11101-5922; iFresh, Inc., 2-39 54th Avenue Long Island City, New York 11101-5922; and New Sunshine Group LLC, 2113 Overseas Highway, Marathon, FL 33050.

By: /s/ *Jeffrey S. Geller*
Florida Bar No. 0063721