UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 4:18-cv-10276-KMM

HARTFORD FIRE INSURANCE
COMPANY, a foreign corporation,

    Plaintiff,

v.

NEW YORK MART GROUP, INC.,
a foreign corporation, IFRESH, INC.,
a foreign corporation, NEW SUNSHINE
GROUP, LLC, a Florida corporation,

    Defendants.
_____/

## HARTFORD FIRE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Plaintiff, HARTFORD FIRE INSURANCE COMPANY ("HARTFORD"), by and through its undersigned counsel and pursuant to applicable *Federal Rules of Civil Procedure* and S.D. LOCAL RULES, hereby files this instant *Motion for Summary Judgment and Incorporated Memorandum of Law* ("*Motion*") against the Defendant, IFRESH, INC. ("IFRESH") and as grounds therefor states as follows:

### I. INTRODUCTION

This is a classic case where the entry of summary judgment is appropriate. The instant *Motion* is founded upon an *Indemnity Agreement* executed by NEW SUNSHINE GROUP, LLC ("NSG"), NEW YORK MART GROUP, INC. ("NYMG") and NYMG's parent company, IFRESH (collectively, the "INDEMNITORS"), in favor of HARTFORD, as supersedeas bond surety. The INDEMNITORS agreed to indemnify HARTFORD against any losses and/or expenses and to post collateral with HARTFORD sufficient to discharge HARTFORD from and against any and all liability which might be incurred as a result of HARTFORD's issuance of the

subject bonds. HARTFORD has, in fact, incurred losses and expenses based upon the issuance of the subject bonds and, as such, demanded indemnification and the posting of collateral – but the INDEMNITORS have refused to comply with their obligations under the *Indemnity Agreement*. The undisputed facts, set forth separately in HARTFORD's *Statement of Material Facts in Support of Motion for Summary* (the "*Statement*") including the pleadings[1], discovery[2], and record evidence[3] supporting same, and the governing legal standards defining a surety company's rights under its indemnity agreements, demonstrate that HARTFORD is entitled to judgment as a matter of law.

## II.  MEMORANDUM OF LAW

### A. Standard for Granting Summary Judgment

The standard for granting summary judgment was fully addressed by this Court in *Liberty Mut. Ins. Co. v. Aventura Eng'g & Const. Corp.*:

> The court's focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *Bishop v. Birmingham Police Dep't,* 361 F.3d 607, 609 (11th Cir.2004).
>
> The moving party bears the initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact. *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir.1997). ***Once the moving party satisfies this burden, the burden shifts to the party opposing the motion to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial***." *Celotex v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A factual dispute is genuine only if the evidence is such

---

[1] *See Amended Complaint for Damages and Equitable Relief* ("*Complaint*") **[DE 9]**; and IFRESH's *Answer and Affirmative Defenses* **[DE 23].**

[2] *See* IFRESH's *Response to Request for Admissions*, attached to the *Statement* as **Exhibit "A"**; IFRESH's *Response to First Set of Interrogatories*, attached to the *Statement* as **Exhibit "B"**.

[3] *See Affidavit of Richard L. Levesque in Support of Motion for Summary Judgment* (the "*Leveque Affidavit*") **[DE 48]**; *Affidavit of Baya Harrison III* ("*Harrison Affidavit*") **[DE 49]**; *Affidavit of Leslie Reyes* (the "*Reyes Affidavit*") **[DE 50]**; *Affidavit of Arturo Ayala* ("the *Ayala Affidavit*") **[DE 51]**; and the *Affidavit of Reasonable Attorneys' Fees* (the "*Attorneys' Fees Affidavit*") **[DE 52]**.

> that a reasonable fact finder could return a verdict for the non-moving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Denney v. City of Albany,* 247 F.3d 1172, 1181 (11th Cir.2001) (Emphasis added).

*Liberty Mut. Ins. Co. v. Aventura Eng'g & Const. Corp.*, 534 F. Supp. 2d 1290, 1302 (S.D. Fla. 2008).

### B. **HARTFORD is Entitled to Indemnification as a Matter of Law**

HARTFORD has incurred unreimbursed losses in the amount of Four Hundred Sixty-Nine Thousand One Hundred Sixty-Five and 25/100 Dollars ($469,165.25) in connection with its issuance of the *Bonds*.[4] The plain language of the *Indemnity Agreement* obligates each of the INDEMNITORS, joint and severally, to reimburse HARTFORD for all of these losses and expenses.[5] The pleadings, affidavits, and *Indemnity Agreement* establish HARTFORD's *prima facie* entitlement to recover on its breach of contract claim and of the amounts set forth therein: (1) the existence of the contract;[6] (2) performance by HARTFORD by issuing the *Bonds*;[7] (3) breach by INDEMNITORS in failing to reimburse HARTFORD for costs, losses and expenses as a result of issuing the *Bonds*;[8] and (4) damages.[9]

By executing the *Indemnity Agreement*, INDEMNITORS expressly agreed that "verified originals, copies, computer printouts, or other ***payment records kept or prepared by HARTFORD*** in the ordinary course of business ***shall be prima facie evidence of the fact and amount of Loss***"[10]

---

[4] *See Statement,* ¶ 19; and *Leveque Affidavit, Claims Reserve Summary,* Exhibit "I" thereto.

[5] *See Statement,* ¶ 8; and *Leveque Affidavit, Indemnity Agreement*, Exhibit "D" thereto.

[6] *See Statement,* ¶ 6; and *Leveque Affidavit, Indemnity Agreement*, Exhibit "D" thereto.

[7] *See Statement,* ¶¶ 5 and 10.

[8] *See Statement,* ¶¶ 14, 17, and 19.

[9] *See Statement,* ¶¶ 18-21; and *Leveque Affidavit, Claims Reserve Summary,* Exhibit "I" thereto.

[10] *See Statement,* ¶ 8; and *Leveque Affidavit, Indemnity Agreement*, Article 4, Exhibit "D" thereto.

*See Travelers Cas. & Sur. Co. of Am. v. Winmark Homes, Inc.*, 518 Fed. Appx. 899, 903 (11th Cir. 2013) ("By signing the indemnity agreement, the []defendants agreed that computer printouts [payment records of its attorneys' fees], verified by affidavit, would be prima facie evidence of the fact and amount of loss.").

As such, the *Leveque Affidavit* by attaching the payment records, establishes the "fact and amount" of the INDEMNITORS' liability under the *prima facie* evidence clause in the *Indemnity Agreement*.[11] *See Liberty Mut. Ins. Co. v. Aventura Eng'g & Const. Corp.,* 534 F. Supp. 2d, at 1320 (relying on prima facie evidence clause to issue $2.7 million summary judgment in favor of surety); *Great Am. Ins. Co. v. Gen. Contractors & Const. Mgmt., Inc.*, 2008 WL 2245986, at *4 (S.D.Fla. 2008) ("Plaintiff has made a *prima facie* case that it made the payments in good faith. The Indemnity Agreement states in the Second Article that when the Surety makes payments thereunder, the 'evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety'"); *Auto-Owners*, 2007 WL 676217 (applying *prima facie* evidence clause to enter summary judgment in favor of surety); *Gray Ins. Co. v. Omnicon, LCC*, 2013 WL 12081091, at *2 (N.D.Fla. 2013) ("Gray has substantiated its loss amount by providing an itemized statement of damages through the Affidavit …, which is sufficient *prima facie* evidence of the same under the terms of the Indemnity Agreement"); s*ee also Travelers Cas. & Sur. Co. of Am. v. Winmark Homes, Inc.*, 518 Fed. Appx. 899, 903 (11th Cir. 2013) (*prima facie* evidence clause was sufficient to support trial court's summary judgment in favor of surety based on affidavit attaching itemized list of payments); *Engbrock v. Fed. Ins. Co.*, 370 F.2d 784, 786 (5th Cir. 1967) (*prima facie* evidence clause was enforceable and not

---

[11] *See Statement*, ¶¶ 8 and 19; and *Leveque Affidavit, Indemnity Agreement* and *Claims Reserve Summary*, Exhibits "D" and "I" thereto.

against public policy and "Similar provisions, although apparently harsh as to an indemnitor, often have been upheld").

Courts, understanding the importance of the indemnity agreement, regularly enforce indemnity agreements and the broad remedies granted to sureties. *Liberty Mutual*, 534 F.Supp.2d, at 1304; *The Revenue Markets,* 209 F.3d 725; *Thurston v. I.F.I.C.*, 528 So.2d 128 (Fla. 3rd DCA 1988); *Waterhouse v. McDevitt & Street Co.*, 387 So.2d 470 (Fla. 5th DCA 1980); *Engbrock v. Federal Ins. Co.*, 370 F.2d 784 (5th Cir. 1987); *Employees Ins. of Wausau v. Able Green, Inc.*, 749 F.Supp. 1100 (S.D.Fla. 1990). Thus, consistent with the terms of the indemnity agreement, ***the surety is entitled to indemnity for all payments made by it in good faith and under a belief that it might be liable, regardless of whether actual liability exists***. *Liberty Mutual*, 534 F.Supp. 2d 1320. Applying authoritative law to the unambiguous language of the *Indemnity Agreement* and based upon the undisputed facts detailed in the *Affidavits*, HARTFORD has established its *prima facie* case of entitlement to summary judgment for breach of contract as a matter of law.

## C. **The Affirmative Defenses are Factually Invalid or Legally Insufficient**

Although not required to be specifically refuted, the defenses raised by IFRESH are not legally or factually sufficient to create any defense to liability and are refuted by the *Indemnity Agreement* at issue, affidavits, and applicable case authority.[12] Here, in addition to the arguments fully set forth and specifically incorporated herein by HARTFORD's *Motion to Strike IFRESH'S Affirmative Defenses* **[DE 32]** and associated *Reply in Support* **[DE 37]** (collectively the "*Motion to Strike and Reply*"), the *Affidavits* supporting HARTFORD's *Statement* reveal no genuine issue of material fact exists which would support the denial of summary judgment.

---

[12] HARTFORD does not address IFRESH's *First Affirmative Defense*, i.e. "lack of personal jurisdiction", as IFRESH has agreed to the striking and/or withdrawal of such defense. *See Memorandum in Opposition to Motion to Strike IFresh's Affirmative Defenses* **[DE 36]**, ¶ 2; and IFRESH's *Response to First Set of Interrogatories*, No. 6.

### i. The INDEMNITORS' Second Affirmative Defense, Arguing Lack of Consideration, is Without Merit and Unsupported by Existing or Authoritative Law

In asserting the affirmative defense of lack of consideration, IFRESH maintains that no benefit was conferred as "iFresh was not named as a defendant or otherwise involved in the underlying state court action."[13] This affirmative defense based on lack of consideration is without merit. The law of consideration with respect to contracts of indemnity is well defined: "*[i]ncurring liability as a surety is a sufficient consideration for a contract to indemnify him from the consequences of such act*." *See Kochan v. American Fire and Casualty Company*, 200 So.2d 213, 215 (Fla. 2d DCA 1967). In this matter, the IFRESH executed an *Indemnity Agreement* which expressly states as follows:[14]

> This **General Indemnity Agreement ("Agreement") is made and entered into by the undersigned, for themselves and others, in favor of and to induce Hartford to Underwrite Bonds. In consideration thereof**, the undersigned jointly and severally acknowledge and agree as follows… (Emphasis added).[15]
>
> The **Indemnitors represent, warrant and agree that each has a substantial, material and beneficial interest in (a) Hartford Underwriting Bonds; and (b) obtaining Bonds hereunder; and (c) each of the other Indemnitors obtaining Bonds hereunder, and (d) the transaction(s) for which they or any other Indemnitor has applied or will apply to Hartford for Bonds pursuant to this Agreement**. The **Indemnitors represent and warrant (a) there have been no written or verbal representations made to induce the Indemnitors to execute this Agreement**; and (b) each and every agreement, term, commitment, condition and waiver contained in this Agreement was knowingly, willingly, and voluntarily made as an inducement to Hartford after a full and complete opportunity by Indemnitors to have the entirety of this Agreement reviewed carefully by legal counsel; and (c) that all Books and Records, information and disclosures provided to Hartford are materially accurate and complete. (Emphasis added).[16]

---

[13] *See* IFRESH's *Answer and Affirmative Defenses*, p. 9.

[14] *See Statement*, ¶ 6.

[15] *See Statement*, ¶ 6; and *Leveque Affidavit, Indemnity Agreement*, p. 1, Exhibit "D" thereto.

[16] *See Statement*, ¶ 6; and *Leveque Affidavit, Indemnity Agreement*, Article 3, Exhibit "D" thereto.

Applying the foregoing express language of the *Indemnity Agreement* to applicable law, it is clear that the INDEMNITORS, specifically including IFRESH, had beneficial interests in obtaining the *Bonds*, and that the *Indemnity Agreement* was essential consideration to the issuance of same. It cannot be disputed that HARTFORD did, in fact, issue the *Bonds* on behalf of NYMG and NSG, and as such, IFRESH cannot now simply deny the express terms of the *Indemnity Agreement*. *See Kochan*, at 216 (where indemnity agreement stated that wife had beneficial interest in issuance of bonds for her husband's construction work, wife could not deny the express terms of the agreement by asserting a lack of consideration).

Additionally, "[a] party normally is bound by a contract that the party signs unless the party can demonstrate that he or she was prevented from reading it or induced by the other party to refrain from reading it." *See Consol. Res. Healthcare Fund I, Ltd.,* 853 So.2d 500, at 504; *see also, Allied Van Lines, Inc. v. Bratton,* 351 So.2d 344, 347–48 (Fla.1977) ("It has long been held in Florida that one is bound by his contract. Unless one can show facts and circumstances to demonstrate that he was prevented from reading the contract, or that he was induced by statements of the other party to refrain from reading the contract, it is binding."). Neither IFRESH nor any of the INDEMNITORS allege that they were somehow prevented from reading the *Indemnity Agreement* and, thus, cannot now claim lack of assent to the clear and unambiguous terms set forth therein. In fact, IFRESH admits to being given the opportunity to read the *Indemnity Agreement* and consult with legal counsel prior to executing the contract.[17]

Moreover, IFRESH's own filings with the United States Government belie its position that it received no direct financial benefit (*i.e*., consideration) from HARTFORD's issuance of the

---

[17] *See Statement*, ¶ 7 and Exhibit "A" thereto.

*Bonds* on behalf of NYMG. By its *Quarterly Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 (Form 10-Q)* for the quarter ending September 30, 2018,[18] IFRESH made the following pertinent representations:

- NYMG was a "related party" with a direct affect upon IFRESH's financial wherewithal;[19]

- IFRESH "do[es] not believe any currently pending legal proceedings to which the Company is a party will have a material adverse effect upon the Company's business prospects, financial condition, cash flows, or results of operations, ***other than the following***";[20]

- IFresh identifies and explains the Underlying Litigation including the issuance of the *Bonds*, and specifically acknowledges that "***[t]he Company has accrued $500,000 for the potential loss and expenses associated with this case***."[21]

As such, any efforts by IFRESH to argue that it did not have a "substantial, material, and beneficial interest" in obtaining issuance of the *Bonds* is directly contradicted by its own Government filings.

Based upon the foregoing, the express language of the *Indemnity Agreement* and the facts of record directly contradict the basis of IFRESH's *Second Affirmative Defense* for lack of consideration, which should be paid no heed by the Court.

### ii. INDEMNITORS' *Third Affirmative Defense* Based on Fraud in the Inducement is Unsupported by Authoritative Law and the Record Facts

Any assertion that IFRESH was fraudulently induced by HARTFORD into signing the *Indemnity Agreement*[22] is contradicted by the express terms of the contract, applicable facts, and well-settled law. Although IFRESH argues, without any documentary or factual support, that

---

[18] *See Statement*, ¶ 31; and Exhibit "C".

[19] *See Statement*, ¶ 31; and Exhibit "C", p. 8, § 7.

[20] *See Statement*, ¶ 31; and Exhibit "C", p. 38, Part II, Item 1.

[21] *See Statement*, ¶ 31; and Exhibit "C", p. 39.

[22] *See* IFRESH's *Answer and Affirmative Defenses*, p. 9.

HARTFORD falsely stated that IFRESH would not be liable under the *Indemnity Agreement*, the language of the *Indemnity Agreement* clearly states otherwise. As more fully set forth in the *Motion to Strike and Reply*, Florida law well recognizes that IFRESH cannot legally demonstrate justifiable reliance and fraudulent inducement because its claimed false representation is directly contradicted by the terms of the *Indemnity Agreement*. *See Rose v. ADT Sec. Services, Inc.*, 989 So. 2d 1244, 1247 (Fla. 1st DCA 2008) (citing *Taylor Woodrow Homes Fla., Inc. v. 4/46–A Corp.,* 850 So.2d 536, 542–43 (Fla. 5th DCA 2003) (a party "may not recover in fraud for an alleged false statement when proper disclosure of the truth is subsequently revealed in a written agreement between the parties."). The *Indemnity Agreement* continually and plainly states that IFRESH shall be immediately liable to, and shall also indemnify, hold harmless and exonerate, HARTFORD for HARTFORD's losses.[23] IFRESH cannot now choose to ignore the bargained for rights and obligations set forth under the clear terms of the *Indemnity Agreement*.

In addition to case law decidedly refuting this defense, IFRESH's self-serving and unsupported "facts" are wholly negated by the record evidence before this Court. The *Affidavits* directly contradict IFRESH's claims of misrepresentation by HARTFORD. Specifically, IFRESH falsely claims that:

> Prior to the execution of the Indemnity Agreement, representatives of [HARTFORD] misrepresented to Baya Harrison, Esq. (iFresh's former general counsel) that [HARTFORD] required iFresh (as NYMG's parent corporation) to execute the Indemnity Agreement but that such was merely a corporate formality as [HARTFORD] would only look to the parties to the underlying lawsuit for indemnification. [HARTFORD's] representative assured iFresh that it would not be liable for any payment under the Indemnity Agreement or that it would not be required to proffer any collateral with respect to the bonds at issue.[24]

---

[23] *See Statement, ¶* 8-9; and *Leveque Affidavit, Indemnity Agreement*, Exhibit "D" thereto.

[24] *See* IFRESH's *Response to First Set of Interrogatories* No. 8, attached to the *Statement* as Exhibit "B".

The *Affidavits*, including the *Harrison Affidavit*, demonstrate there is, in fact, absolutely no validity to IFRESH's wholly unsupported allegations.[25] In fact, the *Harrison Affidavit* establishes that, prior to or during the execution of the *Indemnity Agreement*, Mr. Harrison did not have any communications with any representative from HARTFORD in connection with the terms of the *Indemnity Agreement* or the rights and obligations of any party thereto.[26] More importantly, the *Harrison Affidavit* establishes that, at no time, did HARTFORD ever represent to Mr. Harrison that: (a) IFRESH's signature on the *Indemnity Agreement* was a mere corporate formality;[27] (b) HARTFORD would only look to NYMG and NSG for indemnification;[28] (c) IFRESH would not be liable for any payment under the *Indemnity Agreement*;[29] or (d) HARTFORD would not require IFRESH to proffer any collateral in connection with the *Bonds* at issue in the Underlying Litigation.[30]

To the contrary, the *Affidavits* evidence that at all times prior to, during, and/or immediately after the execution of the *Indemnity Agreement* HARTFORD relied upon the *Indemnity Agreement* – and specifically the indemnity of IFRESH, NYMG, and NSG – when issuing the *Bonds*.[31] The *Affidavits* thus factually evidences IFRESH's full knowledge and agreement to indemnify HARTFORD, and be bound by the terms of the *Indemnity Agreement*.[32]

---

[25] *See Statement*, ¶¶ 26 and 28-30.

[26] *See Statement*, ¶ 28; and *Harrison Affidavit*, ¶6.

[27] *See Statement*, ¶ 28; and *Harrison Affidavit*, ¶7.

[28] *See Statement*, ¶ 28; and *Harrison Affidavit*, ¶8.

[29] *See Statement*, ¶ 28; and *Harrison Affidavit*, ¶9.

[30] *See Statement*, ¶ 28; and *Harrison Affidavit*, ¶10.

[31] *See Statement*, ¶¶ 11, 23-27, and 29; *Reyes Affidavit*, ¶¶ 5-7 and 10-14*;* and *Ayala Affidavit* ¶¶ 5, 8, 11, 14, and 17.

[32] *See Statement*, ¶¶ 29-30.

Applying the clear language of the *Indemnity Agreement* and the record facts to authoritative law, IFRESH's *Third Affirmative Defense* is invalid and/or fails to set forth the existence of any material fact which would preclude summary judgment in favor of HARTFORD.

### D.  **HARTFORD is Entitled to an Award of its Attorneys' Fees, and Costs**

As more fully set forth in the *Statement*, HARTFORD has incurred attorneys' fees and costs, and retained the services of the undersigned counsel to represent its interests in this matter, such that HARTFORD is required to pay a reasonable fee for those services.[33]  Pursuant to the terms of the *Indemnity Agreement*, the INDEMNITORS agreed to be liable for, and agreed that HARTFORD was entitled to recover, any and all attorneys' fees and costs incurred in connection with the issuance of the *Bonds* and the prosecution of the instant action.[34]

It is well-settled that the Court is deemed an expert in determining the reasonableness of attorneys' fees and costs, and has the ultimate discretion in granting such award:

> For decades the law in [11th Circuit] has been that: The court, either trial or appellate, is itself an expert on the question and ***may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value***.... Where documentation is inadequate, the district court is not relieved of its obligation to award a reasonable fee, ***but the district court traditionally has had the power to make such an award without the need of further pleadings or an evidentiary hearing***. *Norman v. Housing Authority of Montgomery,* 836 F.2d 1292, 1303 (11th Cir. 1988) (quotations and citations omitted) (Emphasis added).

*Santos v. CCT Corp.*, 2010 WL 11505981, at *1 (S.D. Fla. 2010); *see also Cullens v. Georgia Dept. of Trans.*, 29 F.3d 1489, 1492 (11th Cir. 1994) ("[W]e reemphasize that the district court has discretion in determining the amount of a fee award.  This is appropriate in the view of the district

---

[33] *See Statement*, ¶¶ 20 and 21.

[34] *See Statement*, ¶¶ 6 and 8; and *Leveque Affidavit, Indemnity Agreement*, Exhibit "D" thereto.

court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters").

HARTFORD's attorneys' fees are based upon reasonable rates. The hourly rate and experience of the attorneys in this matter is identical to the hourly rates and experience presented in *Int'l Fid. Ins. Co. v. Americaribe-Moriarity JV*, 234 F. Supp. 3d 1242, 1253 (S.D. Fla. 2017). In *Americaribe*, this Court ruled that the proposed attorney rates provided by the undersigned's firm, ranging from $225 to $250, were reasonable:

> Based on the Court's expertise and the rates of attorneys in the local market, Plaintiffs' requested rates are reasonable for lawyers and paralegals in this District. *See, e.g.*, *Golf Clubs Away, LLC v. Hostway Corp.*, 2012 WL 2912709, at *3 (S.D. Fla. July 16, 2012) (awarding reasonable attorney fees of $500/hour for partners, $350/hour for associates, and $125/hour for paralegals); *Caballero v. Sum Yum Gai, Inc.*, 2011 WL 1675001, at *2 (S.D. Fla. May 3, 2011) (awarding attorney fees ranging from $150 to $350 an hour, depending on experience); *1254 ABC Charters, Inc. v. Bronson,* 2010 WL 1332715 (S.D. Fla. Mar. 16, 2010) (finding $125 to be reasonable for paralegals and law clerks); *CC–Aventura, Inc. v. Weitz Co., LLC*, 2008 WL 276057, at *2 (S.D. Fla. Jan. 31, 2008) (reducing an eighth year associate's billing rate from $475 to $400 and reducing a first year associate's billing rate from $325 to $200).

*Id.* at 1253–54. Like *Americaribe*, the hourly attorney rates in this matter range from $225 to $250,[35] and appear to be on the low-end of the generally accepted prevailing market rates. Based upon the foregoing, HARTFORD's hourly attorneys' fee rate should be deemed to be reasonable.

As with the determination of reasonable hourly rates, this Court also enjoys broad discretion in determining exclusions for excessive or unnecessary work on given tasks. *Norman*, 836 F.2d at 1306. Nevertheless, it is incumbent on the movant to present specific and organized evidence detailing the time spent to guide the Court in determining the amount of hours to award. *Americaribe*, 234 F. Supp. 3d at 1254. HARTFORD has provided this Court with invoices and

---

[35] *See Attorneys' Fees Affidavit* ¶ 5 **[DE 52]**.

other documentation which describe in detail the time expended for, among other things, researching, writing, and preparing various motions and papers.[36] Given the evidence presented, and in light of HARTFORD's efforts in attempting to obtain a favorable result in this litigation and in otherwise resolving the claims under the *Bonds*, the attorneys' fees and costs incurred by HARTFORD in investigating the claims under the *Bonds* and for prosecuting its rights under the *Indemnity Agreement* are demonstrably reasonable. Consequently, HARTFORD is entitled to be reimbursed and indemnified from the INDEMNITORS for its reasonable attorneys' fees and costs pursuant to the *Indemnity Agreement* in the total amount of Thirty-Nine Thousand Two Hundred Thirty-Eight and 60/100 Dollars ($39,238.60).[37]

### III.  CONCLUSION

Based upon the foregoing, it is beyond dispute that: (a) there exists a valid and fully enforceable contractual agreement between the parties (*to wit*: the *Indemnity Agreement*); (b) the actions of HARTFORD were authorized by the *Indemnity Agreement*; (c) IFRESH has defaulted under the *Indemnity Agreement*; (c) HARTFORD has been damaged; (d) HARTFORD has provided this Court with *prima facie* evidence of the amount of liability; and (e) HARTFORD has provided this Court with sufficient evidence of reasonable attorneys' fees and costs. It is further beyond dispute that none of the *Affirmative Defenses* raised by IFRESH are legally or factually sufficient, as a matter of law, to defeat HARTFORD's entitlement to summary judgment.

**WHEREFORE**, HARTFORD respectfully requests that this Honorable Court enter *Summary Judgment* in its favor and against IFRESH, as follows:

---

[36] *See Attorneys' Fees Affidavit*, Composite Exhibit "A" thereto.

[37] *See Attorneys' Fees Affidavit* ¶ 4.

1. Awarding entitlement to indemnity in favor of HARTFORD and against IFRESH, finding damages in the amount of Four Hundred Twenty-Four Seven Hundred Seventy-Two and 07/100 Dollars ($424,772.07), representing HARTFORD's incurred direct loss as result of issuing the *Bonds*;

2. Awarding HARTFORD its incurred loss adjustment expenses, including but not limited to attorneys' fees and costs in the total amount of Thirty-Nine Thousand Two Hundred Thirty-Eight and 60/100 Dollars ($39,238.60) pursuant to the terms of the *Indemnity Agreement*;

3. Awarding HARTFORD its interest, at the "maximum statutory rate" pursuant to the terms of the *Indemnity Agreement* (from the date of payment (January 29, 2019) through mediation (July 9, 2019)) in the total amount of Thirty-Seven Thousand Two Hundred Fifty and 44/100 Dollars ($37,250.44), and continuing thereafter at the daily rate of Two Hundred Thirty-One and 37/100 Dollars ($231.37);

4. Finding that upon entry of the instant *Summary Judgment* against IFRESH, the Court shall likewise enter a *Default Final Judgment* against NYMG and NSG in accordance with the previously filed motion **[DE 24]**; and

5. Awarding HARTFORD such other and further relief as this Court deems necessary, just and proper.

        **ETCHEVERRY HARRISON LLP**
        Attorneys for HARTFORD
        150 South Pine Island Road, Suite 105
        Ft. Lauderdale, FL 33324
        Phone: (954) 370-1681
        Fax: (954) 370-1682
        etcheverry@etchlaw.com
        geller@etchlaw.com
        service@etchlaw.com

By:   */s/ Jeffrey S. Geller*
        Edward Etcheverry, Fla. Bar No.: 856517
        Jeffrey S. Geller, Fla. Bar No.: 63721

CASE NO.: 4:18-cv-10276-KMM

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that on this 14th day of June 2019, we filed the foregoing with the Clerk of the Court through CM/ECF. We also certify that the foregoing document is being served this day on all counsel of record, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ Jeffrey S. Geller
Jeffrey S. Geller, Fla. Bar No.: 63721