UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 4:18-cv-10276-KMM

HARTFORD FIRE INSURANCE
COMPANY, a foreign corporation,

    Plaintiff,

v.

NEW YORK MART GROUP, INC.,
a foreign corporation, IFRESH, INC.,
a foreign corporation, NEW SUNSHINE
GROUP, LLC, a Florida corporation,

    Defendants.
_____/

## RENEWED[1] MOTION FOR ENTRY OF DEFAULT
## FINAL JUDGMENT ON COUNT IV OF *AMENDED COMPLAINT*

Plaintiff, HARTFORD FIRE INSURANCE COMPANY ("HARTFORD"), by and through its undersigned counsel, hereby moves this Honorable Court for the entry of a *Default Final Judgment on Count IV of Amended Complaint* against the Defendants, NEW YORK MART GROUP, INC. ("NYMG") and NEW SUNSHINE GROUP, LLC ("NSG"), and in support thereof states as follows:

### I. Procedural Background

1.    On November 28, 2018, HARTFORD filed its *Complaint for Damages and Equitable Relief* **[DE 1]** seeking, among other things, collateral and indemnity under an *Indemnity Agreement* executed by NYMG, SFG and IFRESH, INC. ("IFRESH") (collectively, the "INDEMNITORS"). On December 10, 2018, HARTFORD filed its *Amended Complaint* **[DE 9]**.

---

[1] The instant *Motion* was previously filed on February 6, 2019 **[DE 24]** but was denied without prejudice by the Court **[DE 33]** based upon the pendency of Defendant IFRESH's *Answer*. As a *Consent Final Judgment* has now been submitted to the Court for entry, there is no further impediment to the Court's granting of the instant *Motion*.

2.	INDEMNITORS were served on December 5, 2018 and were granted an extension of time to file an *Answer* through January 20, 2019 **[DE 14]**.

3.	Having received no *Answer* or other pleading from the INDMENITORS, a *Clerk's Default* was entered on January 23, 2019 **[DE 16]**.

## II.  Standard for Relief

*Federal Rule of Civil Procedure* 55(b)(1) establishes that, upon application by Plaintiff, a judgment should be entered against Defendants who have been defaulted for not appearing, and against whom the damages sought have been established.  A default has been held to operate as an admission of the truth of all the material allegations set forth in the complaint or declaration, justifying the entry of a default final judgment.  *See Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200 (5th Cir. 1975) ("[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established"); *Whittlesey v. Weyerhauser Co.*, 640 F.2d 739 (5th Cir. 1981) (a party may not challenge the fact-findings of a default judgment which are based on well-pleaded allegations); *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 2009 WL 613603 (11th Cir. 2009) (a defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established).  *See also In re Kimmel*, 28 F.Supp. 942 (S.D. N.Y. 1939) (allegations of fact contained in a complaint were admitted by defendant's default in answering); *International Painters and Allied Trades Industry Pension Fund v. R.W. Amrine Drywall Co., Inc*., 239 F. Supp. 2d 26 (D.D.C. 2002) (defaulting defendant is deemed to admit every well-pleaded allegation in the complaint).

### III. Statement of Undisputed Material Facts

The following undisputed facts have been established by the *Amended Complaint,* the *Affidavit of Rick K. Levesque in Support of Motion for Default Final Judgment* ("*Levesque Affidavit*"),[2] and the *Affidavit of Attorneys' Fees and Costs*:[3]

1. On June 11, 2015, SKKR Trading, LLC d/b/a 38 Live Bait ("38 Live Bait") filed suit against NSG and NYMG in the action styled *SKKR Trading, LLC d/b/a 38 Live Bait v. New York Sunshine Group, LLC and New York Mart Group, Inc.*, Manatee County Circuit Court Case No. 2015 CA 2733 (the "Underlying Litigation").[4]

2. On April 17, 2017, the Court in the Underlying Litigation issued a *Final Judgment* against NSG and NYMG awarding damages totaling Three Hundred Eighty-Five Thousand Four Hundred Seventy-One and 97/100 Dollars ($385,471.97) – under Count I in the amount of Three Hundred Sixty-Six Thousand Four Hundred Eighty-Eight and 22/100 Dollars ($366,488.22) and under Count III in the amount of Eighteen Thousand Nine Hundred Eighty-Three and 75/100 Dollars ($18,983.75) – together with interest on both amounts at the statutory rate.[5]

3. On March 7, 2017, the Court in the Underlying Litigation also issued an *Order Granting Plaintiff's Entitlement to, and Amount of, Attorneys' Fees Pursuant to the Court's November 7, 2016 Order and Amount of Attorneys' Fees Pursuant to the Court's January 27, 2017 Order* (the "*Attorneys' Fees Order*"), awarding attorneys' fees to 38 Live Bait and against NSG

---

[2] The *Levesque Affidavit* has been previously filed with the Court on February 6, 2019 [**DE 24.2**]. Additional facts in support of the instant *Motion* may also be found in the *Affidavit of Rick K. Levesque in Support of Hartford Fire Insurance Company's Motion for Summary Judgment against iFresh, Inc.* dated June 14, 2019 [**DE 48**].

[3] The *Affidavit of Attorneys' Fees and Costs* has been previously filed with the Court on June 14, 2019 in connection with *Hartford Fire Insurance Company's Motion for Summary Judgment* against Defendant IFRESH [**DE 52**].

[4] *See Amended Complaint*, ¶10; *Levesque Affidavit* ¶3.

[5] *See Amended Complaint*, ¶11, attaching a true and correct copy of the *Final Judgment* as **Exhibit "A"**; *Levesque Affidavit* ¶4.

and NYMG in the amount of Forty Thousand Six Hundred Fifty-Four and 50/100 Dollars ($40,654.50).[6]

4.As a result of the entry of the *Final Judgment* and *Attorneys' Fees Order* in the Underlying Litigation, NSG and NYMG filed an appeal before the Florida Second District Court of Appeals in Consolidated Case Nos. 2D17-1432 and 2D17-2051 (the "Appellate Litigation").[7]

5.At the request of NSG, NYMG and IFRESH (collectively, the "INDEMNITORS"), on June 30, 2017, HARTFORD, as surety, issued two (2) separate and distinct *Supersedeas Bonds*, bearing nos. 72BSBFS5949 and 72BSBFS5954 (collectively, the "*Bonds*"), on behalf of NYMG and NSG, as principals, and in favor of the 38 Live Bait, as obligee. *Supersedeas Bond* No. 72BSBFS5949 was issued in the amount of Three Hundred Eighty-Five Thousand Four Hundred Seventy-One and 97/100 Dollars ($385,471.97) and was intended to secure the *Final Judgment*; *Supersedeas Bond* No. 72BSBFS5954 was issued in the amount of Forty-Four Thousand Seven Hundred Sixty and 61/100 Dollars ($44,760.61) and was intended to secure the *Attorneys' Fees Order*.[8]

6.On June 12, 2017, and as a condition precedent to issuing the *Bonds*, INDEMNITORS executed a *General Indemnity Agreement* ("*Indemnity Agreement*") in favor of HARTFORD.[9]

7.Pursuant to Article 4 of the *Indemnity Agreement*, the INDEMNITORS, jointly and severally, agreed to immediately indemnify, hold harmless, and exonerate HARFTORD from and

---

[6] *See Amended Complaint*, ¶12, attaching a true and correct copy of the *Attorneys' Fees Order* as **Exhibit "B"**; *Levesque Affidavit* ¶5.

[7] *See Amended Complaint*, ¶13; *Levesque Affidavit* ¶6.

[8] *See Amended Complaint*, ¶14, attaching true and correct copies of the *Bonds* as **Composite Exhibit "C"**; *Levesque Affidavit* ¶7.

[9] *See Amended Complaint*, ¶15, attaching a true and correct copy of the *Indemnity Agreement* as **Exhibit "D"**; *Levesque Affidavit* ¶8.

against any and all losses and/or expenses incurred in connection with HARTFORD's issuance of the *Bonds*:[10]

> **Indemnification, Hold Harmless and Exoneration.** The *Indemnitors shall indemnify, hold harmless and exonerate Hartford* from and against any and all Default, Loss, Claims and exposure or liabilities relating to Underwriting. The *Indemnitors shall immediately be liable to Hartford for all Loss* from the date such Loss was incurred by Hartford. Indemnitors agree that verified originals, copies, computer printouts, or other payment records kept or prepared by Hartford in the ordinary course of business shall be prima facie evidence of the fact and amount of Loss…. (Emphasis added)

As part of the losses and expenses to be indemnified, HARTFORD is entitled to "interest on all amounts paid at the maximum statutory rate."[11]

8. At the request of the INDEMNITORS, on June 20, 2017, and HARTFORD, as surety, issued a *Rider* to *Supersedeas Bond* No. 72BSBFS5949, increasing the penal sum thereof to the amount of Four Hundred Twenty-Four Thousand Four Hundred Four and 64/100 Dollars ($424,404.64).[12]

9. By correspondence dated August 13, 2018, HARTFORD made demand upon the INDEMNITORS to immediately satisfy their obligations under the *Indemnity Agreement* by exonerating and collateralizing HARTFORD against any potential losses and/or expenses incurred in connection with HARTFORD's issuance of the *Bonds*.[13]

10. Despite such demand, the INDEMNITORS have failed and continue to fail and/or refuse to fulfill their indemnity obligation to HARTFORD.[14]

---

[10] *See Amended Complaint*, ¶16; *Levesque Affidavit* ¶9.

[11] *See Indemnity Agreement*, Articles 1(g) and 4.

[12] *See Amended Complaint*, ¶19, attaching a true and correct copy of the *Rider* as **Exhibit "E"**; *Levesque Affidavit* ¶10.

[13] *See Amended Complaint*, ¶20, attaching a true and correct copy of HARTFORD's correspondence dated August 13, 2018 as **Exhibit "F"**; *Levesque Affidavit* ¶11.

[14] *See Amended Complaint*, ¶21; *Levesque Affidavit* ¶12.

11. On October 26, 2018, the Court in the Appellate Litigation affirmed the *Final Judgment* and *Attorney's Fees Order* against NSG and NYMG.[15]

12. Following the affirmation in the Appellate Litigation, HARTFORD issued several verbal and written demands upon the INDEMNITORS for the immediate satisfaction of the outstanding *Final Judgment* and *Attorney's Fees Order* or, in the alternative, for compliance with the outstanding indemnity and collateral demands under the *Indemnity Agreement*.[16]

13. Despite such demands, the INDEMNITORS have failed and continue to fail and/or refuse to fulfill their obligations to HARTFORD under the *Indemnity Agreement*.[17]

14. Based upon the *Final Judgment* and *Attorney's Fees Order* entered in the Underlying Litigation, demand has been made by 38 Live Bait for HARTFORD's satisfaction of its obligation under the *Bonds*, and HARTFORD has issued payment to 38 Live Bait in the amount of Four Hundred Twenty-Four Thousand Seven Hundred Seventy-Two and 07/100 Dollars ($424,772.07).[18]

15. There exists a valid and fully enforceable contract between HARTFORD and the INDEMNITORS, the terms of which are memorialized in the *Indemnity Agreement*.[19]

16. HARTFORD has fully performed all of its obligations under the *Indemnity Agreement*.[20]

---

[15] *See Amended Complaint*, ¶22, attaching a true copy of the *Opinion* as **Exhibit "G"**; *Levesque Affidavit* ¶13.

[16] *See Amended Complaint*, ¶23; *Levesque Affidavit* ¶14.

[17] *See Amended Complaint*, ¶24; *Levesque Affidavit* ¶15.

[18] *See Amended Complaint*, ¶25; *Levesque Affidavit* ¶16.

[19] *See Amended Complaint*, ¶64.

[20] *See Amended Complaint*, ¶65.

17. As a result of the claims against the *Bonds*, HARTFORD has made demand upon the INDEMNITORS under the *Indemnity Agreement* for the payment in satisfaction of the losses and/or expenses incurred and/or to be incurred by HARTFORD.[21]

18. The INDEMNITORS have failed and/or refused to fully perform their obligations under the *Indemnity Agreement*, including but not limited to their obligation to indemnify HARTFORD.[22]

19. As a proximate result of the INDEMNITORS' breach of their obligations under the *Indemnity Agreement*, HARTFORD has and will continue to incur substantial financial damages, including but not limited to the expenditure of funds paid: (i) in defense of the pending claims against the *Bonds*; (ii) in resolution of the pending claims against the *Bonds*; and/or (iii) in resolution of the instant litigation.[23]

20. HARTFORD has retained the services of the undersigned counsel to represent its interests in this matter and is required to pay a reasonable fee for such services.[24]

21. Under the *Indemnity Agreement*, the INDEMNITORS, jointly and severally, agreed to be liable for, and agreed that HARTFORD is entitled to recover from the INDEMNITORS, any and all attorneys' fees and costs incurred in the prosecution of any action under the *Indemnity Agreement*.[25]

---

[21] *See Amended Complaint*, ¶66.

[22] *See Amended Complaint*, ¶67.

[23] *See Amended Complaint*, ¶68.

[24] *See Amended Complaint*, ¶27.

[25] *See Amended Complaint*, ¶28; *Levesque Affidavit* ¶17.

22. HARTFORD has incurred attorneys' fees in addressing the claims against the *Bonds* in the amount of Thirty-Nine Thousand Two Hundred Thirty-Eight and 60/100 Dollars ($39,238.60), as more fully broken-down in the *Affidavit of Attorneys' Fees and Costs*.[26]

## V. Legal Argument

### A. The Undisputed Facts Show that HARTFORD is Entitled to Indemnification as a Matter of Law.

The *Amended Complaint* and *Levesque Affidavit* clearly demonstrate that HARTFORD has paid (and/or is in the process of paying) unreimbursed direct losses and expenses in connection with its issuance of the *Bonds*. The plain language of the *Indemnity Agreement* obligates the INDEMNITORS to reimburse HARTFORD for all of these losses and expenses.

Suretyship is a "tripartite relationship" under which the surety binds itself to the performance of its bonded principal to the obligee, upon which the principal agrees to indemnify and protect the surety from any loss. *See Liberty Mutual Ins. Co. v. Aventura Engineering and Construction Corp.*, 534 F.Supp. 2d 1290, 1304 (S.D. Fla. 2008); *Shannon R. Ginn Constr. Co. v. Reliance Ins. Co.,* 51 F.Supp. 2d 1347 (S.D. Fla. 1999); *Western World Ins. Co. v. Travelers Indemnity Co.*, 358 So.2d 602 (Fla. 1st DCA 1978). Because sureties manage loss in large part through indemnification instead of premium calculations, suretyship is not "insurance" in the typical sense of the word. *Id.* As a result, sureties draft their indemnity agreements extremely broadly, and with extensive protections for the surety. Courts, understanding the importance of the indemnity agreement, regularly enforce the indemnity agreements and the broad remedies granted to sureties. *See Liberty Mutual*, 534 F.Supp.2d, at 1304; *The Revenue Markets, Inc. v. Amwest Surety Ins. Co.,* 35 F.Supp. 2d 899 (S.D. Fla. 1998), *aff'd in part, rev'd in part*, 204 F.3d 1121, 209 F.3d 722, 209 F.3d 725; *Thurston v. I.F.I.C.*, 528 So.2d 128 (Fla. 3rd DCA 1988); *Waterhouse*

---

[26] *See* **[DE 52]**.

*v. McDevitt & Street Co.*, 387 So.2d 470 (Fla. 5th DCA 1980); *Engbrock v. Federal Ins. Co.*, 370 So.2d 784 (5th Cir. 1987); *Employees Ins. of Wausau v. Able Green, Inc.*, 749 F.Supp. 1100 (S.D. Fla. 1990).

Thus, consistent with the terms of the indemnity agreement, **_the surety is entitled to indemnity for all payments made by it in good faith and under a belief that it might be liable, regardless of whether actual liability exists_**. See *Liberty Mutual*, 534 F.Supp. 2d 1320. The declaration of a default and demand on a bond gives the surety a reasonable belief that potential liability exists under the bond. *Id*. As a result, any payments HARTFORD made to investigate, address, resolve and/or settle the claims against the *Bonds* are recoverable under the *Indemnity Agreement*. The *Amended Complaint* and *Levesque Affidavit* establish that HARTFORD has incurred unreimbursed direct losses under the *Bonds* in the amount of Four Hundred Twenty-Four Thousand Seven Hundred Seventy-Two and 07/100 Dollars ($424,772.07),[27] has incurred interest on all unreimbursed direct losses under the *Bonds* in the amount of Thirty-Three Thousand Seven Hundred Twenty-Five and 74/100 Dollars ($33,725.74) since January 29, 2019, and made unreimbursed payments in investigating, addressing, resolving and/or settling the claims against the *Bonds* in the amount of Thirty-Nine Thousand Two Hundred Thirty-Eight and 60/100 Dollars ($39,238.60).[28] Under the *Indemnity Agreement* and authoritative law, HARTFORD is entitled to indemnification from the INDEMNITORS for such amounts.

### B. The Undisputed Facts Show that the INDEMNITORS Have no Defense to HARTFORD's Indemnity Rights as a Matter of Law.

Federal case authority (applying Florida law) is clear that the only defense to indemnity is "deliberate malfeasance" on the part of the surety. See *Liberty Mutual*, 534 F.Supp. 2d, at 1319-1320; *Employers Insurance of Wausau v. Able Green, Inc.*, 749 F.Supp. 1100 (S.D. Fla. 1990).

---

[27] *See Levesque Affidavit* ¶18.

[28] *See Levesque Affidavit* ¶20.

This standard requires an "intentional wrongful act." *Id.*, at 1103. "A [lack] of diligence or negligence is not the equivalent of bad faith, and even gross negligence is not the same as bad faith." *Id.*; *see also*, *Engbrock v. Federal Insurance Co.*, 370 F.2d 784 (5th Cir. 1967) (surety's negligence is not a defense to an indemnity action); *Waterhouse v. McDevitt and Street Co.*, 387 So.2d 470 (Fla. 5th DCA 1980) (surety entitled to reimbursement for any payments "for payments made in the belief that such were necessary or expedient").

Federal cases applying Florida law *uniformly reject findings* of bad faith based on theories that a surety's payments are excessive, unreasonable or unjustified. There are numerous examples in the case law where claims that a surety made excessive payments are rejected as a defense to indemnity. This principle has likewise been found in various other actions. In *Engbrock v. Federal Insurance Co.*, 370 F.2d 784 (5th Cir. 1967), the Fifth Circuit established that the negligence of a surety was legally insufficient to defeat its right to indemnification. In that case, the contractor defaulted, and surety made payments under its bonds to complete the work. Surety sued for indemnity. The indemnitor alleged that "some of the payments made by the surety were excessive" and that "surety did not do what it should have done in order to limit or minimize the costs on the job." *Id.*, at 786. The court held that "[a]t most, the pleading alleges negligence by Surety. But neither lack of diligence nor negligence is the equivalent of bad faith, and improper motive … is an essential element of bad faith…. Hence, we conclude it was not error for the trial judge to deny admission into evidence the testimony of [the indemnitor] that the payments were excessive." *Id.*

Under this line of cases, courts have confirmed that under a surety's indemnity agreement, the surety is simply held to the standard of avoiding "deliberate malfeasance." Thus, the only relevant inquiries for the Court are: (a) whether the INDEMNITORS defaulted under the *Indemnity Agreement*; (b) whether the actions of HARTFORD were authorized by the *Indemnity Agreement*;

and (c) whether HARTFORD had a good-faith belief that it was exposed to potential loss. So long as HARTFORD acted within the scope of the *Indemnity Agreement*, it cannot, as a matter of law, act in "bad faith."

In this instance, the INDEMNITORS have been defaulted and, thus, has waived any right to assert a defense to the pending claims.

### C. HARTFORD is Entitled to be Indemnified for its Reasonable Attorneys' Fees and Costs.

As more fully set forth in the *Amended Complaint, Levesque Affidavit*, and *Affidavit of Attorneys' Fees and Costs,* HARTFORD has retained the services of the undersigned counsel to represent its interests in this matter and is required to pay a reasonable fee for such services. Pursuant to the terms of the *Indemnity Agreement*, the INDEMNITORS agreed to be liable for, and agreed that HARTFORD was entitled to recover from the INDEMNITORS any and all attorneys' fees and costs incurred in the prosecution of the instant action. HARTFORD has incurred attorneys' fees and costs in prosecuting the instant claims under the *Indemnity Agreement* in the amount of Thirty-Nine Thousand Two Hundred Thirty-Eight and 60/100 Dollars ($39,238.60).[29]

It is well-settled that the Court is deemed an expert in determining the reasonableness of attorneys' fees and costs, and has the ultimate discretion in granting such award:

> For decades the law in [11th Circuit] has been that: The court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value... Where documentation is inadequate, the district court is not relieved of its obligation to award a reasonable fee, but the district court traditionally has had the power to make such an award without the need of further pleadings or an evidentiary hearing. *Norman v. Housing Authority of Montgomery,* 836 F.2d 1292, 1303 (11th Cir. 1988) (quotations and citations omitted).

---

[29] *See Levesque Affidavit* ¶20.

> Thus, Judge Bandstra and this Court are experts on the reasonableness of attorneys' fees, and as such Judge Bandstra properly analyzed Plaintiff's fee request.

*Santos v. CCT Corp.*, 2010 WL 11505981, at *1 (S.D. Fla. Jan. 4, 2010); *see also Cullens v. Georgia Dept. of Trans.*, 29 F.3d 1489, 1492 ("[W]e reemphasize that the district court has discretion in determining the amount of a fee award. This is appropriate in the view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.").

Based on well-settled law and this Court's expert opinion, HARTFORD's attorneys' fees are based on reasonable rates. The hourly rate and experience of the attorneys in this matter is identical to the hourly rates and experience presented in *Int'l Fid. Ins. Co. v. Americaribe-Moriarity JV*, 234 F. Supp. 3d 1242, 1253 (S.D. Fla. 2017). In *Americaribe*, this Court ruled that the proposed attorney rates provided by the undersigned's firm, ranging from $225 to $250, were reasonable:

> Based on the Court's expertise and the rates of attorneys in the local market, Plaintiffs' requested rates are reasonable for lawyers and paralegals in this District. *See, e.g.*, *Golf Clubs Away, LLC v. Hostway Corp.*, 2012 WL 2912709, at *3 (S.D. Fla. July 16, 2012) (awarding reasonable attorney fees of $500/hour for partners, $350/hour for associates, and $125/hour for paralegals); *Caballero v. Sum Yum Gai, Inc.*, 2011 WL 1675001, at *2 (S.D. Fla. May 3, 2011) (awarding attorney fees ranging from $150 to $350 an hour, depending on experience); *1254 *ABC Charters, Inc. v. Bronson,* 2010 WL 1332715 (S.D. Fla. Mar. 16, 2010) (finding $125 to be reasonable for paralegals and law clerks); *CC–Aventura, Inc. v. Weitz Co., LLC*, 2008 WL 276057, at *2 (S.D. Fla. Jan. 31, 2008) (reducing an eighth year associate's billing rate from $475 to $400 and reducing a first year associate's billing rate from $325 to $200).

*Id.* at 1253–54. Like *Americaribe*, the hourly attorney rates in this matter range from $225 to $250,[30] and appear to be on the low-end of the generally accepted prevailing market rates in this District. Based on the foregoing, HARTFORD's hourly attorneys' fee rate is deemed to be reasonable.

---

[30] *See Affidavit of Attorneys' Fees and Costs* ¶ 4.

As with the determination of reasonable hourly rates, this Court also enjoys broad discretion in determining exclusions for excessive or unnecessary work on given tasks. *Norman*, 836 F.2d at 1306. Nevertheless, it is incumbent on the movant to present specific and organized evidence detailing the time spent to guide the Court in determining the amount of hours to award. *Americaribe*, 234 F. Supp. 3d at 1254. HARTFORD has provided this Court with invoices and other documentation which describe in detail the time expended for, among other things, researching, writing and preparing various motions and papers. Given the evidence presented, and in light of HARTFORD's efforts in attempting to obtain a favorable result in this litigation and in successfully resolving various claims under the *Bonds*, the attorneys' fees and costs incurred by HARTFORD in investigating the claims under the *Bonds* and for prosecuting its rights under the *Indemnity Agreement* are demonstrably reasonable. Consequently, HARTFORD is entitled to be reimbursed and indemnification from the INDEMNITORS for its reasonable attorneys' fees and costs pursuant to the *Indemnity Agreement*.

## VI.  Conclusion

Based upon the foregoing, it is beyond dispute that: (a) there exists a valid and fully enforceable contractual agreement between the parties (*to wit*: the *Indemnity Agreement*); (b) the actions of HARTFORD were authorized by the *Indemnity Agreement*; (c) HARTFORD had a good-faith belief that it was and is exposed to potential loss; (d) HARTFORD was damaged as a result of its satisfaction of the claims against the *Bonds*; and (e) the INDEMNITORS have defaulted under the *Indemnity Agreement*, resulting in damages to HARTFORD.

**WHEREFORE**, HARTFORD respectfully requests that this Honorable Court enter *Default Final Judgment* against NYMG and NSG under Count IV of the *Amended Complaint* in the amount of **Four Hundred Ninety-Seven Thousand Seven Hundred Thirty-Six and 41/100 Dollars ($497,736.41)**, calculated as follows:

a. the amount of Four Hundred Twenty-Four Thousand Seven Hundred Seventy-Two and 07/100 Dollars ($424,772.07) for Plaintiff's direct paid losses under the *Supersedeas Bonds*;

b. the amount of Thirty-Three Thousand Seven Hundred Twenty-Five and 74/100 Dollars ($33,725.74) for interest due and owing by IFRESH to HARTFORD since January 29, 2019 under the *Indemnity Agreement*; and

c. the amount of Thirty-Nine Thousand Two Hundred Thirty-Eight and 60/100 Dollars ($39,238.60) for Plaintiff's attorneys' fees and costs in addressing the claims against the *Supersedeas Bonds* and under the *Indemnity Agreement*;

reserving jurisdiction of the parties and subject matter hereof for the purpose of entering such further *Orders* and *Judgments* as may be necessary and proper; and awarding HARTFORD such other and further relief as this Court deems necessary, just and proper.

**ETCHEVERRY HARRISON LLP**
Attorneys for HARTFORD
150 South Pine Island Road, Suite 105
Ft. Lauderdale, FL 33324
Phone: (954) 370-1681
Fax: (954) 370-1682
etcheverry@etchlaw.com
geller@etchlaw.com
service@etchlaw.com

By: */s/ Jeffrey S. Geller*
Edward Etcheverry, Fla. Bar No. 856517
Jeffrey S. Geller, Fla. Bar No. 63721

CASE NO.: 4:18-cv-10276-KMM

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on this 10th day of July 2019, we filed the foregoing with the Clerk of the Court through CM/ECF.  We also certify that the foregoing document is being served this day on all counsel of record, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: */s/ Jeffrey S. Geller*
      Jeffrey S. Geller, Fla. Bar No. 63721