UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 4:18-cv-10276-KMM

HARTFORD FIRE INSURANCE
COMPANY, a foregin corporation,

    Plaintiff,

v.

NEW YORK MART GROUP, INC., a foreign
Corporation, IFRESH, INC., a foreign
Corporation, NEW SUNSHINE GROUP, LLC,
a Florida corporation,

    Defendants.
_____/

**REPORT AND RECOMMENDATION ON MOTION TO REISSUE STOCK CERTIFICATES OF NYM HOLDING, INC. AND DELIVER SAME FOR LEVY**

THIS CAUSE is before the Court on Judgment Creditor Hartford Fire Insurance Company's ("Hartford" or "Judgment Creditor") Motion to Reissue Stock Certificates of NYM Holding, Inc. and Deliver Same for Levy (the "Motion") against Judgment Debtor, iFresh, Inc. ("iFresh"). ECF No. [97]. IFresh filed its Memorandum in Opposition to the Motion ("Opposition"). ECF No. [99]. Hartford thereafter filed its Reply in Support of the Motion. ECF No. [100]. The matter is now ripe for disposition. After due consideration of the Motion, the pertinent portions of the record, and being fully advised in the premises the undersigned **RECOMMENDS** that the Motion, ECF No. [97], be **GRANTED**.

**I.    BACKGROUND**

On July 29, 2019, the District Court entered an Order in favor of Hartford against New York Mart Group, Inc., iFresh, Inc., and New Sunshine Group, LLC (collectively "Defendants" or

1

"Judgment Debtors") jointly and severally for a total amount of $458,497.81. ECF No. [68] at 5. Since that time, Hartford has been conducting discovery in execution of the judgment. ECF No. [97] at 2.

On October 22, 2019, Hartford filed a Motion to Compel Discovery and for Sanctions on the grounds that iFresh had failed "to provide the full and complete documentation" pursuant to Hartford's previous discovery requests. ECF No. [84] ¶ 6. There were two hearings on the Motion to Compel Discovery and for Sanctions before undersigned—one on January 9, 2020 and a second hearing on January 16, 2020. ECF Nos. [91], [92], [94], [95]. At the second hearing, undersigned ordered as follows:

> (1) Defendant shall provide an Amended Response to the Judgment Creditor's Request for Production in Aid of Execution no later than Monday, January 27, 2020; (2) Plaintiff may take a Rule 30(b)(6) deposition of Defendant iFresh, Inc.'s corporate representative no later than Monday, February 17, 2020 with all costs to be borne by Defendant iFresh, Inc.; (3) the Rule 30(b)(6) deposition of Defendant iFresh, Inc.'s corporate representative shall take place at a location of Plaintiff's choosing in the Southern District of Florida; and (4) Plaintiff's counsel is awarded, pursuant to Rule 37 and without objection from Defendant iFresh, Inc., $3,000.00 in attorneys' fees and costs incurred in connection with the filing of the Motion.

ECF No. [95].

At the Rule 30(b)(6) deposition of iFresh's corporate representative, iFresh's CEO, Mr. Long Deng, testified that iFresh's sole asset is its 100% ownership in NYM Holding, Inc. ("NYM") and that any other assets reflected in their SEC filings are assets of subsidiaries. ECF Nos. [97] ¶ 7; [97-4] at 2. IFresh Inc. is a publicly traded company with a market capitalization of approximately over $23 million. ECF No. [97-3]. A corporate structure chart produced by iFresh shows that NYM Holding Inc., is iFresh's direct subsidiary. ECF No. [97-5].

After the deposition and learning of iFresh's ownership of NYM, Hartford served its second set of interrogatories requesting the location of the stock certificates, representing iFresh's

ownership interest in NYM. ECF Nos. [97] ¶ 9; [97-6] at 4. IFresh responded that it was unable to locate the stock certificates. ECF Nos. [97] ¶ 10; [97-7] at 1. Specifically, iFresh stated that "Defendant has not been able to locate any stock certificates in its offices or otherwise in Defendant's possession, custody, or control (such as in the possession of a third-party agent, accountant, or attorney), and Defendant therefore believes (but cannot confirm) that no such stock certificates were ever provided at the time of acquisition or thereafter." ECF No. [97-7] at 1–2.

In its Opposition, iFresh added that on or about February 27, 2017, NYM entered into a pledge agreement with KeyBank National Association ("KeyBank"). ECF No. [99] at 6–7. KeyBank made available to NYM Holding a $5,000,000.00 revolving credit facility and a $15,000,000.00 term loan ("Pledge Agreement") and in exchange, KeyBank received a 100% pledge of all NYM's equity interest and a first priority secured lien therein. *Id.* Pursuant to the Pledge Agreement, KeyBank's first priority security interest continues until NYM fulfills its loan obligations. *Id.* at 7–8. IFresh represents that these loan obligations continue and that KeyBank's first priority secured interest in the stock certificates remains. *Id.* at 8.

## II.     LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 69(a)(1), "[t]he procedure on execution [for a money judgment] . . . must accord with the procedures of the state where the court is located, but a federal statute governs to the extent it applies." Under Florida Statutes Section 56.061, "stock in corporations, shall be subject to levy and sale under execution." Furthermore, Section 678.1121(5) of the Florida Statutes specifies that:

> [a] creditor whose debtor is the owner of a certificated security, uncertificated security, or security entitlement is entitled to aid from a court of competent jurisdiction, by injunction or otherwise, in reaching the certificated security, uncertificated security, or security entitlement or in satisfying the claim by means allowed at law or in equity in regard to property that cannot readily be reached by other legal process.

*See Chevron Corp. v. Donzinger*, 2020 WL 3643043, at *6 (S.D. Fla. July 6, 2020) (ordering the reissuance of stock certificates to be turned over to the judgment creditor so that the judgment creditor may levy the shares for execution); *Schanck v. Gayhart*, 245 So. 3d 970 (Fla. 1st DCA 2018) (affirming the trial court's order that a husband reissue and turn over stock and membership certificates, later discovered to be located in Canada, to his ex-wife's estate); *House v. Williams*, 573 So. 2d 1012, 1013 (Fla. 5th DCA 1991) (ordering a "closely held corporation controlled by the judgment debtors to reissue stock certificates in their names when they refuse to respond to discovery or to disclose the location of the original stock certificate.").

In order to act on property located outside of its jurisdiction, a court must have *in personam* jurisdiction over a defendant. In *Schanck*, the First District Court of Appeals noted that:

> [i]t has long been established in this and other jurisdictions that a court which has obtained *in personam* jurisdiction over a defendant may order that defendant to act on property that is outside the court's jurisdiction, provided that the court does not *directly* affect the title to the property while it remains in the foreign jurisdiction.

245 So. 3d at 973–74 (quoting *Gen. Elec. Capital Corp. v. Advance Petroleum, Inc.*, 660 So. 2d 1142 (Fla. 3d DCA 1995)). In other words, "a court may not *directly* act upon real or personal property which lies beyond its borders," but only indirectly through "its assertion of *in personam* jurisdiction over the defendant." *Gen. Elec. Capital Corp.*, 660 So. 2d at 1143 (emphasis added); *see also Inversiones Y Procesadora Tropical Inprotsa, S.A. v. Del Monte Int'l GMBH*, No. 16-24275-CV, 2020 WL 6384878, at *3 (S.D. Fla. Aug. 5, 2020), *report and recommendation adopted*, No. 16-24275-CIV, 2020 WL 6384299 (S.D. Fla. Oct. 30, 2020) (holding that the Court has jurisdiction to order the judgment debtor to act on its intangible property rights outside of this District because the Court has *in personam* jurisdiction over the judgment debtor). To act directly on property, however, requires *in rem* jurisdiction. *Guarantee Ins. Co. v. Brand Mgmt. Serv., Inc.*, No. 12-61670-CIV, 2012 WL 12837296, at *4 (S.D. Fla. Dec. 11, 2012).

### III. ANALYSIS

Hartford filed the instant Motion requesting that iFresh cancel its existing stock certificates in NYM, reissue the stock certificates in iFresh's name and deliver the same stock certificates for levy and execution. ECF No. [97] at 1, 7. IFresh countered that the Motion should be denied because: (1) Hartford did not comply with the meet-and-confer requirements of Local Rule 7.1(a)(3); (2) Hartford has not registered its judgment in New York; (3) Hartford misstates Florida law as to whether the Court has jurisdiction to direct iFresh to cancel and reissue the stock certificates; and (4) canceling the existing stock certificates in NYM, reissuing them in iFresh's name, and turning them over to the Court for levy directly affects a secured creditor's interest. ECF No. [99] at 1–8. For the reasons noted below, the undersigned recommends that the failure to comply with the requirements of Local Rule 7.1(a)(3) be excused and that the Court Order that the stock certificates should be canceled, reissued, and delivered for levy.

**A. Although Hartford Failed To Meet-And-Confer Pursuant To Local Rule 7.1(a)(3), the Motion Should Not Be Denied On That Ground.**

Southern District of Florida Local Rule 7.1(a)(3) requires that counsel for a moving party confer, or make reasonable effort to confer, with all parties or non-parties who may be affected by the relief sought in the motion. If the moving party does not comply with this Local Rule, the court may deny the motion and impose sanctions. S.D. Fla. L.R. 7.1(a)(3). The Local Rule does, however, have several exceptions. *Id.* A motion for garnishment or other relief under Federal Rule of Civil Procedure 64, for example, is exempt from the meet and confer requirement. *Id.*

Hartford claims that the instant Motion falls squarely within the meet-and-confer exception because Federal Rule of Civil Procedure 64 is entitled "Seizing a Person or Property"—and seizing property is the very reason for the instant Motion. ECF No. [100] at 2. Hartford argues that the reason for the exception to motions for relief under Federal Rule of Civil Procedure 64 "is to allow

5

the movant to seek such relief without alerting the other side, thereby providing it with the opportunity to hide or dispose of its assets," which was a concern to Hartford. *Id.* IFresh states that Hartford is not within the exception to Local Rule 7.1(a)(3) because the Motion is brought pursuant to Federal Rule of Civil Procedure 69, entitled "Execution," and not Federal Rule of Civil Procedure 64.  ECF No. [99] at 2.

It is correct that Hartford filed its Motion pursuant to Federal Rule of Civil Procedure 69 and not Rule 64; therefore, Hartford's Motion is not exempt from Local Rule 7.1(a)(3). *See* ECF No. [97] at 4.  However, the undersigned finds that Hartford presented a good faith argument as to why they believed, although incorrectly, that their Motion fell under the exception to meet and confer.  Indeed, Federal Rules of Civil Procedure 64 and 69 both concern the procedure for satisfying a judgment.  Denying the Motion on the merits, for the failure to comply with the Local Rule 7.1(a)(3), is not warranted as it would deny Hartford the right to satisfy the judgment.  To be clear, however, the undersigned does not find that the Local Rule should be excused, as Hartford contends, due to iFresh's "continued and repetitive misconduct/misrepresentations." ECF No. [100] at 3.  Even assuming that the representations made by Hartford as to iFresh's conduct were correct, the misconduct of one party does not excuse another party from complying with the Local Rules.

### B. Hartford Is Not Required To Register Its Judgment In New York.

IFresh's argument that Hartford is required to register its judgment in New York is incorrect.  IFresh has conceded that the stock certificates cannot be located. ECF No. [97-7] at 1–2.  Under 28 U.S.C. § 1963, the judgment could have been registered in New York for enforcement if the judgment creditor believed that that property was located there. *Stansell v. Revolutionary Armed Forces of Colombia (FARC)*, 149 F. Supp. 3d 1337, 1342 (M.D. Fla. 2015) ("Plaintiffs may

seek to attach the blocked accounts, without any jurisdictional objection, by registering their judgment in the district where the property is located pursuant to 28 U.S.C. § 1963 and thereafter by commencing [] proceedings, as other similarly situated judgment creditors have done."). However, in this case, there is no basis to find that the stock certificates are in New York or any other state as iFresh's representation is that they are either lost or were never issued. Additionally, as explained *infra*, Hartford does not have to register its judgment in New York because this Court has the jurisdiction over Defendant and said Defendant does not contest that it has the ability to cancel, reissue, and deliver the stock certificates.

    **C. Because The Location Of The Stock Certificates Is Unknown, The Court May Order iFresh, Over Whom It Has *In Personam* Jurisdiction, To Reissue Stock Certificates And Deliver Them For Levy.**

Hartford relies on Florida law to argue that the Court has jurisdiction to order the reissuance of stock certificates. ECF Nos. [97] at 3–6; [100] at 4–7; *see Donzinger*, 2020 WL 3643043, *Schanck*, 245 So. 3d 970, *House* 573 So. 2d 1012. Hartford heavily relies on two cases, *Schanck* and *House,* where judgment debtors were seeking to levy stock certificates which were lost and/or that no longer existed. ECF Nos. [97] at 3–4; [100] at 1, 4–6. In *Schanck,* the court held that a trial court has the authority to order a judgment debtor to cancel, reissue, and turnover stock certificates that are *lost or no longer exist* in another jurisdiction. 245 So. 3d at 970 (emphasis added). Likewise, in *House*, the trial court ordered the judgment debtors to reissue stock certificates and deliver them for execution after the judgment debtors refused to disclose the location of the original stock certificates. 573 So. 2d at 1013.

IFresh counters that Hartford misstates Florida law, particularly in its reliance on *Schanck* and "fail[s] to disclose a conflict among the Florida appellate courts" by not mentioning the case of *Sargeant v. Al-Saleh*, 137 So. 3d 432 (Fla. 4th DCA 2014). ECF No. [99] at 4. Additionally, iFresh responds that the cases on which Hartford relies are cases where the target company or

individual had ties to Florida. ECF No. [99] at 5–6. Because iFresh has "no connection to Florida other than being named as a defendant in this lawsuit" iFresh relies on *Sargeant*, where the court concluded that it lacked the *in rem* jurisdiction to order the turnover of stock certificates located outside of Florida, despite having *in personam* jurisdiction over the debtors. ECF No. [99] at 3–6; *see Sargeant*, 137 So. 3d 432.

A careful review of both *Schanck* and *Sargaent* is necessary. In *Schanck*, the judgment debtor owed his ex-wife's estate. 245 So. 3d at 971–72. At his deposition, the judgment debtor was asked about the location of certain stock certificates and stated that he did not know where they were located. *Id.* at 972. The estate then filed a motion under Florida Statutes Section 678.1121 requesting that the court order the turnover of the stock certificates or, if they were unable to be located, the reissuance of the stock certificates and delivery to the estate. *Id.* Following the filing of said motion, the judgment debtor asserted that the stock certificates in question had been "transported to his wife's new residence in Canada" weeks before the deposition. *Id.* Consequently, he argued that, because the Florida court did not have *in rem* jurisdiction over the certificates and only *in personam* jurisdiction over the judgment debtor, the court lacked jurisdiction to grant the motion, and the estate was required to seek relief in the foreign jurisdiction. *Id.* The trial court disagreed and ordered the cancellation and reissuance of the stock certificates for delivery to the estate. *Id.* The appellate court affirmed and held that:

> [S]ection 678.112(5) authorizes a court to aid the creditor "in reaching the security or in satisfying the claim by means allowed by law or in equity," including by ordering their reissuance, regardless of whether securities cannot be seized because their location is unknown or because the debtor has attempted to move them outside the court's reach.

*Id.* at 975.  In short, *Schanck* clearly stands for the proposition that a court need only have jurisdiction over the defendant in cases where the location of a security is unknown or the securities have been moved by the debtor.

IFresh argues that there is a conflict in Florida law because *Sargeant* requires the Court to have *in rem* jurisdiction over the property.  ECF No. [99] at 3–6.  In *Sargeant*, the Fourth District reversed a judgment ordering the turnover of stock certificates located in the Bahamas, Netherlands, Jordan, the Isle of Man, and the Dominican Republic because, even though there was *in personam* jurisdiction, there was no *in rem* jurisdiction over the stock certificates.  137 So. 3d at 433–34.  *Sargeant* expressed two main concerns "about the practical implications of permitting Florida trial courts to order judgment debtors to turn over assets located outside the state."  *Id.* at 435.  First, if there are competing claims to a single asset, these competing claims would best be decided in a single forum—traditionally, where the asset is located.  *Id.* at 435 (citing *Koehler v. Bank of Bermuda Ltd.*, 911 N.E.2d 825, 831 (2009)); *see also Inversiones Y Procesadora Tropical Inprotsa*, 2020 WL 6384878, at *3–4 (finding that even though the court had *in personam* jurisdiction over the judgment debtor, the property had been conferred to another party and the proper forum was where the property was located).  Second, "allowing trial courts to bring out-of-state assets into Florida would effectively eviscerate the domestication of foreign judgment statutes."  *Sargeant*, 137 So. 3d at 435.

The Court does not find that the holdings in *Sargeant* and *Schanck* are necessarily in conflict.  While in both cases the court had *in personam* jurisdiction over the judgment debtors, in *Sargeant*, property existed over which the court could exercise *in rem* jurisdiction.  *See Sargeant*, 137 So. 3d at 433–34.  In *Schanck*, as is the case here, the property's location was unknown and therefore *in rem* jurisdiction over the property was not possible and it was sufficient to only have

*in personam* jurisdiction over the judgment debtor. 245 So. 3d at 975. Because iFresh's CEO testified during his deposition that iFresh had been unable to locate the stock certificates and could not confirm whether such stock certificates were ever provided, *in rem* jurisdiction over the stock certificates is not possible—not for any court in Florida or anywhere else. *See* ECF No. [97-7] at 1–2. Indeed, to find that a court needs *in rem* jurisdiction over property that a defendant claims is lost would be to leave a creditor with no recourse when a debtor claims that the property is lost or that its location is unknown. Because there is no property on which the Court may directly act at this time, this is not an *in rem* action and the undersigned's decision is guided by *Schanck* and *House*, both cases where stock certificates in question were lost or non-existent and *in personam* jurisdiction was sufficient. *Schanck*, 245 So. 3d at 972; *House*, 573 So. 2d at 1013. As there is no dispute that this Court has *in personam* jurisdiction over the judgment debtor, this Court orders stock certificates be reissued and delivered for levy.

### D. The Court Has The Authority To Levy The Stock Certificates Notwithstanding A Secured Creditor's Interest.

In its Response, iFresh argues that the Court is also prevented from ordering the reissuance and delivery of the stock certificates because to do so would "directly interfere[] with title to the subject stock certificates." ECF No. [99] at 6. Specifically, because KeyBank has a first priority secured interest in the stock certificates, any order by this Court to reissue and deliver the stock certificates would affect their title. *Id.* at 8.

The undersigned disagrees that any order to reissue the stock certificates would affect their title because the Motion asks that the stock certificates be reissued in iFresh's name and tendered for levy. ECF No. [97] at 3, 6. Once the stock certificates are delivered to the Court, any disagreement about whether Hartford or another secured creditor has priority over the distributions can be resolved separately.

### IV.     RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that the Motion, ECF No. [97], be **GRANTED**.

### V.      OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Court Judge for the Southern District of Florida, within FOURTEEN (14) DAYS of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

DONE AND SUBMITTED in Chambers at Miami, Florida, this 21st day of January, 2021.

_____
**JACQUELINE BECERRA**
**United States Magistrate Judge**